IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01854-MSK-KLM

In re:                                                                      (Bankruptcy Case No. 04-17042-SNB
FRONT RANGE PIPE & SUPPLY, INC.,                                Chapter 7)
TIN: 84-1133596
Debtor.

_____

JEFFREY A. WEINMAN, TRUSTEE,              (Bankruptcy Adversary Proceeding
                                                                      No. 07-01296-SBB)
     Plaintiff,

v.

BOJAR J. VODA, d/b/a A&A Fire Protection,

     Defendant,

and

THERESA VODA,

     Garnishee.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on a Writ of Garnishment with Notice of Exemption and Pending Levy issued by the Clerk of the Court and served on Garnishee Theresa Voda [Docket No. 12; Filed June 22, 2009], Answers to the writ of garnishment [Docket Nos. 15 and 16; Filed July 7, 2009] and a Traverse [Docket No. 17; Filed July 13, 2009]. The garnishment concerns a 2002 Subaru Legacy station wagon purchased by Defendant Bojar Voda and transferred to Theresa Voda. Bojar Voda, the judgment debtor, and Theresa

1

Voda, the garnishee, (the "Vodas") claim that the vehicle is exempt from garnishment. The Vodas are husband and wife, reside in Glenwood Springs, Colorado, and are proceeding *pro se*. The Court held an evidentiary hearing on September 22, 2009. For the reasons set forth below, I RECOMMEND that judgment be entered in favor of Bojar J. Voda, d/b/a A & A Fire Protection, and against Garnishee Theresa Voda for the use and benefit of Front Range Pipe & Supply, Inc., and that Garnishee be ordered to deliver the motor vehicle to the United States Marshal for execution upon the writ.

## I. Factual Background

Plaintiff, Jeffrey A. Weinman, is the Chapter 7 trustee of the bankruptcy estate of Front Range Pipe & Supply, Inc. ("Front Range"), Case No. 04-17042 SBB, which is pending in the United States Bankruptcy Court for the District of Colorado. Bojar J. Voda, d/b/a A&A Fire Protection, is a judgment debtor of Front Range. On September 7, 2007, the District Court entered an Order and Judgment in favor of Plaintiff and against Bojar Voda in the amount of $31,500.00 plus interest from and after July 1, 2005 at 8% per annum, compounded annually, and costs in the amount of $250.00. [#3].

The writ of garnishment at issue in this case was served on Theresa Voda. Answers were filed by the Vodas on July 7, 2009 [#15 & #16]. In their Answers, the Vodas state that Mr. Voda sold his truck and purchased the Subaru wagon in December 2008. Thereafter, he gave Ms. Voda the vehicle as a gift. The Vodas claim that the vehicle is exempt from garnishment because it is the their only form of transportation. *Id.* Plaintiff filed a Traverse to the Answers on July 13, 2009. [#17].

At the evidentiary hearing held on September 22, 2009, Mr. Voda testified that in December 2008 he owned a 1998 Dodge pickup truck. He knew he was insolvent at the

time. He sold the truck to his employer for $9,000.00. Mr. Voda continues to use the truck for work and occasionally for his personal use. At the time he sold the truck, Mr. Voda owed money to creditors, including Plaintiff, the Internal Revenue Service, medical doctors, and credit card companies. He has not paid the judgment in favor of Front Range which arose from the bankruptcy case.

In December 2008, Mr. Voda purchased a 2002 Subaru Legacy station wagon on eBay, for a price of $8100. On Christmas day, he informed Ms. Voda that he had bought the vehicle for her as a gift. In mid-January 2009, the Vodas took a train to Cleveland to pick up the vehicle. With the $900.00 in proceeds remaining from the sale of the truck, the Vodas drove to Washington, DC for the Presidential Inauguration.

The Subaru wagon is titled in Ms. Voda's name because she works at the Garfield County (Colorado) Clerk's office, which processes license plates, vehicle registrations and titles. The Vodas claim that their actions were not intended to defraud the Trustee or Front Range.

## II. Analysis

A.     Jurisdiction and Applicable Law

Because the Vodas are proceeding *pro se,* the Court must construe their filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not supplement the *pro se* litigant's pleadings or construct a legal theory on the *pro se* parties's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

This is a post-judgment matter arising from a bankruptcy proceeding. The Court has jurisdiction over the matter because it is a non-core proceeding under bankruptcy law. A proceeding which does not invoke a substantive right created by the federal bankruptcy law and is one created outside bankruptcy is a "non-core proceeding." *ADT Sec. Services, Inc. v. First Line Sec., Inc.*, No. 08-cv-00466-CMA-CBS, 2008 WL 5226376, at *3 (D.Colo. 2008)(citing *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). In a non-core proceeding, the bankruptcy court is not able to enter a final judgment. 28 U.S.C. § 157(a)(1).

Post-judgment proceedings are governed by Rule 69 of the Federal Rules of Civil Procedure, which deals with enforcing a judgment. Under the Rule, in the absence of an applicable federal statute, state law applies to attempts to enforce a judgment. The federal court must look to state law for post-judgment proceedings in aid of execution of the judgment. *In re Nye*, 210 B.R. 857, 859 (D. Colo. 1997); *In re Kobernusz*, 160 B.R. 844, 847 (D. Colo. 1993). In post-judgment proceedings, the federal court "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a). Therefore, in this case, the law of Colorado applies. *In re Nye*, 210 B.R. at 859.

B.   Garnishment Proceedings

Under Colorado law, garnishment proceedings are governed by Colo. R. Civ. P. 103. *Moreland v. Alpert*, 124 P.3d 896, 900 (Colo. App. 2005). The Rule provides a means by which a judgment creditor may reach supposed assets of the debtor which are under the control of third parties. *Rocky Mountain Ass'n of Credit Management v. Hessler*, 553 P.2d 840, 843 (Colo. App. 1976). The purpose of garnishment is "to reach ordinarily nonleviable evidences of debt, to prevent the loss or dissipation of such assets, to determine the ownership of such funds, and to provide for the equitable distribution of such funds." *Great

*Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 488 (Colo. App. 2001).

Garnishment proceedings are initiated by the issuance of a writ by the clerk of the court upon the request of a judgment creditor. Colo. R. Civ. P. 103 § 2(c). After service of the writ, the garnishee may answer and raise objections or claim exemptions to the garnishment. *Id.* § 6(b). The party raising an exemption to the writ of garnishment is then entitled to a hearing. *FDIC v. Bowen*, 865 P.2d 868, 872 (Colo. App. 1993). If the judgment creditor disputes the garnishee's answer he may file a traverse, and the garnishor may request a hearing on the matter. Colo. R. Civ. P. 103 § 8.

C.   Fraudulent Transfer

Plaintiff contends that the gift of the Subaru station wagon to Ms. Voda from her husband was a fraudulent transfer, in violation of C.R.S. 38-8-106(1), which provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[1]

A fraudulent transfer occurs if the debtor made a transfer with the actual intent to hinder, delay, or defraud any creditor, or, in the alternative, without receiving a reasonably equivalent value in exchange for the transfer or obligation. *Great Neck Plaza, L.P.*, 37 P.3d at 491. Transfers of property from one spouse to another are presumed fraudulent. *In re Unglaud*, 332 B.R. 303, 315 (N.D. Ill. 2005) (citing Colorado law). Colorado law allows a judgment creditor to litigate questions of fraudulent transfers from a debtor to a garnishee

---

[1] This provision is part of the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-101 *et seq. Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009).

5

in a garnishment proceeding. *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 778 F.Supp. 1116, 1124 (D. Colo. 1991). In a garnishment proceeding, the judgment creditor has the burden of proving the existence and validity of the claim against the garnishee. *Maddalone v. C.D.C. Inc.*, 765 P.2d 1047, 1049 (Colo. App. 1988).

Pursuant to CUFTA, the term "transfer" means every mode of disposing or parting with "an asset or an interest in an asset." Colo. Rev. Stat. § 38-8-102(13). An "asset" does not include "[p]roperty to the extent it is generally exempt immediately prior to the time of transfer under nonbankruptcy law." *Id.* § 38-8-102(2). "Property" is "anything that may be the subject of ownership." *Id.* § 38-8-102(11). "Reasonably equivalent value" is not wholly synonymous with market value; however market value is an important factor to consider. *Schempp v. Lucre Mgmt. Group, LLC*, 18 P.23 762, 765 (Colo. App. 2000). The determination of reasonably equivalent value is based on the facts and circumstances surrounding the transaction. *Id.* "A debtor who is generally not paying his debts as they become due is presumed to be insolvent." Colo. Rev. Stat. § 38-8-103(2).

Mr. Voda's gift of the motor vehicle to his wife was the transfer of an asset. In addition, there is no dispute that Mr. Voda did not receive "a reasonably equivalent value in exchange" for buying the vehicle and providing it to his wife as a gift. The Vodas both testified to this fact.[2] Mr. Voda conceded at the evidentiary hearing that he was insolvent at the time that he purchased the vehicle. He had considerable debt to numerous creditors

---

[2] In her brief, Ms. Voda argues that Mr. Voda did receive "reasonably equivalent value" from the sale of the truck. *Brief* [#30] at 2. The sale of the truck is not the transaction at issue; rather, the garnishment involves Mr. Voda's transfer of the Subaru to his wife without receiving any monetary value in exchange.

when he purchased the vehicle. Therefore, the transaction involving the vehicle was a fraudulent transfer, unless the Vodas can demonstrate that the proceeds of the sale of the truck were exempt before Mr. Voda used them to purchase the Subaru wagon.

D.     Exemption from Writ of Garnishment

The Vodas contend that the Subaru wagon is exempt from garnishment because it is the family's only form of transportation. Under Colorado law, "[o]ne or more vehicles ... kept or used by any debtor in the aggregate value of five thousand dollars" or "kept and used by any elderly or disabled debtor, or by any debtor with an elderly or disabled spouse or dependent, in the aggregate value of ten thousand dollars" are exempt from garnishment. Colo. Rev. Stat. § 13-54-102(1)(j)(I) and (II)(A).[3]  Under the statute, "elderly" is defined as sixty years of age or older. *Id.* § 13-54-101(2.5). Mr. Voda is over sixty years old.

Plaintiff argues that once an exempt asset is transferred and turned into cash or another nonexempt asset, a party cannot exempt the new asset purchased with the cash. Therefore, Plaintiff asserts, by selling the truck and using the cash to purchase the new car, the Vodas lost their motor vehicle exemption.

The Court has not located any cases from this jurisdiction, including the Colorado state courts, which address this precise issue. Plaintiff has not cited any such cases. Nor has the Court located any statute or Colorado case that exempts from garnishment the proceeds from the sale of property generally or from motor vehicle sales specifically.

---

[3] Colorado has adopted separate state exemptions in lieu of the federal exemptions provided by the Bankruptcy Code. *See* Colo. Rev. Stat. § 13-54-107.

However, Colorado law does provide an exemption for the proceeds of certain other transactions, e.g., the proceeds from sales of homestead property, Colo Rev. Stat. § 38-401-207, and proceeds from personal injury claims. *Id.* § 13-54-102(1)(n). In addition, a Colorado statute exempts the proceeds of "any claim[s] for loss, destruction, or damage" to homestead property. *Id.* § 13-54-102(1)(m).

Where language appears in one section of a statute but not in another, the courts assume the omission was intentional. *Universal Const. Co., Inc. v. Occupational Safety & Heath Rev. Com'n*, 182 F.3d 726, 729 (10th Cir. 1999). Generally if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded. *St. Charles Inv. Co. v. C.I.R.*, 232 F.3d 773, 776 (10th Cir. 2000) (citation and quotation omitted). Under Colorado law, the enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded. *Planned Parenthood of Rocky Mountain Services, Corp. v. Owens*, 287 F.3d 910, 925 (10th Cir. 2002). The fact that the Colorado legislature granted exemptions to specific proceeds indicates that it did not intend *all* proceeds of exempt property to also be exempt. The Court "will not read into a statute an exception or proviso that the plain language does not suggest." *Moreland*, 124 P.3d at 900.

There is no question here that Mr. Voda engaged in a fraudulent transaction when he bought the Subaru wagon and gave it to his wife as a gift. Moreover, Colorado law does not provide an exemption from garnishment for the proceeds from the sale of the truck.

Once a transfer is determinated to be fraudulent, "the transfer or obligation must be avoided" to the extent necessary to satisfy the creditor's claim." Colo. Rev. Stat. § 38-8-

108(1)(a).   Under Colorado law, if "the court finds the garnishee liable to the judgment debtor ..., [t]he court shall enter judgment in favor of the judgment debtor ... against the garnishee for the use and benefit of the judgment creditor."   Colo. R. Civ. P. 103 §8(b)(3)(A). In addition, the "court shall order the garnishee to deliver the personal property to the sheriff to be sold." *Id.* § 8(b)(3)(B).  "Any proceeds received upon the sheriff upon such sale" shall be paid to the Clerk of the Court and applied to the judgment creditor. *Id.* § 4(f)(2).[4]

State garnishment laws are applicable in federal proceedings. *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 856 F.2d 1457, 1464 n. 1 (10th Cir. 1988); *see also* Fed. R. Civ. P. 64 (garnishment is available "under the law of the state where the court is located ..."). In applying state law to judgment enforcement proceedings, the court may be faced with a situation where state law does not perfectly fit federal law. For example, in this case, the state rule provides that a sheriff will sell the garnishee's property. In such circumstances, only substantial compliance with state law is required.  *Andrews v. Roadway Express, Inc.*, 473 F.3d 565, 569 (5th Cir. 2006); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1227-1228 (7th Cir. 1993).   Rule 69 is not intended to require the federal court to follow "every jot and title" of state law. *Ruggiero*, 994 F.2d at 1226.

It is the practice in this District that the United States Marshal assists in the execution of a judgment in a garnishment proceeding.  The United States Marshal is also responsible for service of writs of garnishment.  *See* Fed. R. Civ. P. 4.1.  Accordingly, the Marshal is responsible for executing the judgment on the writ by selling the garnished

---

[4] This Rule applies to the execution of judgment in garnishment proceedings.  Colo. R. Civ. P. 103 § 8(b)(3)(B).

property.

### III. Conclusion

For the reasons stated above, I **RECOMMEND** that judgment be entered in favor of Bojar J. Voda, d/b/a A & A Fire Protection, and against the Garnishee, Theresa Voda, for the use and benefit of Front Range Pipe & Supply, Inc. regarding the 2002 Subaru Legacy station wagon, VIN No. 4S3BH806X27609045 (the "2002 Subaru Legacy wagon"). I further **RECOMMEND** that Theresa Voda be ordered to deliver the 2002 Subaru Legacy wagon to the United States Marshal within a reasonable time, for execution upon the judgment.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:   October 26, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix